IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WILLIAM J. ROBERTS,<br><br>    Plaintiff,<br><br><br>          vs.<br><br><br>AMERICA'S WHOLESALE LENDER,<br>BAC HOME LOANS SERVICING, L.P.<br>f/k/a Countrywide Home Loans Servicing,<br>RECONTRUST COMPANY, N.A.,<br>COUNTRYWIDE HOME LOANS, INC.,[1]<br>U.S. BANK NATIONAL ASSOCIATION,<br>and RUSSELL S. WALKER,<br><br>      Defendants. | **REPORT AND RECOMMENDATION**<br><br><br><br>Case No. 2:11-cv-597-DB-SA<br><br><br><br><br><br>**Magistrate Judge Samuel Alba** |

Before the Court is a motion to dismiss filed by Defendants BAC Home Loans Servicing,

LP ("BAC-HLS"), formerly known as Countrywide Home Loans Servicing, LP ("CW-HLS"),

ReconTrust Company, N.A., and Countrywide Home Loans, Inc., doing business as America's

Wholesale Lender ("AWL") (collectively "Defendants").  (Doc. 6.) Having carefully reviewed

---

[1]Defendants explain in their pleadings that America's Wholesale Lender is a trade or "doing business as" name for Countrywide Home Loans, Inc., and that Plaintiff incorrectly identified America's Wholesale Lender as a separate defendant from Countrywide Home Loans, Inc.  (Doc. 7, at 2 n.1.)  The Court explores this argument below, accepts it, and thus concludes that "America's Wholesale Lender" should not have been listed as a wholly different defendant from Countrywide Home Loans, Inc.

and considered the parties' pleadings and having heard oral arguments, the Court recommends

that Defendants' motion to dismiss be granted.

## BACKGROUND

Plaintiff entered into two different loans for his property located at 140 West Macarthur

Avenue, Salt Lake City, Utah 84115 ("the Property") with different defendants.

First, on July 2, 2003, Plaintiff entered into a refinance loan agreement with AWL (Doc.

2-1, Complaint, ¶ 8), which, as described more below, is an assumed name for Countrywide

Home Loans, Inc.  That same day, Plaintiff and AWL executed a Deed of Trust (the "REFI

Deed").  (*Id.* ¶¶ 8-9 & Ex.)  Plaintiff borrowed $102,000.00 from AWL, which was secured by

the REFI Deed.  (*Id.* Ex.)  In his complaint, Plaintiff states, "[i]t is alleged [the Note and REFI

Deed] were sold to a Sponsor or Depositor of a REMIC Trust between 7/3/2003 and 10/30/2003"

(*Id.* ¶ 10), but does not provide any facts or explanation to support that statement.

AWL assigned the beneficial interest under the REFI Deed to Countrywide Home Loans,

Inc. on October 21, 2008, via a Corporation Assignment Deed of Trust/Mortgage signed by

Diana Feehan as AWL's Assistant Secretary.  (*Id.* Ex.)  On July 7, 2009, AWL assigned the

beneficial interest under the REFI Deed to BAC-HLS via a Corporation Assignment Deed of

Trust/Mortgage signed by Angela Nava as AWL's Assistant Secretary.  (*Id.* Ex.)  Then, on July

8, 2009, BAC-HLS appointed ReconTrust as successor trustee of the REFI Deed via a

Substitution of Trustee signed by Angela Nava as BAC-HLS's Assistant Secretary.  (*Id.* Ex.)

Some time later, pursuant to the REFI Deed, ReconTrust scheduled a non-judicial

foreclosure sale of the Property for June 7, 2011, at 10:30 A.M.  (*Id.* ¶ 27.)  That sale did not

occur because Plaintiff and the REFI Deed Defendants agreed to postpone and cancel the sale,

and the Property still has not been foreclosed upon.  *See Roberts v. America's Wholesale Lender*, No. 110913759 (Utah 3d Dist. Ct.) ("Plaintiff and Defendants through their counsel, agreed to postpone and cancel the sale as stated on the record.")[2]

Second, on May 16, 2006, Plaintiff entered into a home equity line of credit agreement with U.S. Bank.  (Doc. 2-1, ¶ 11.)  U.S. Bank provided Plaintiff with a $25,000.00 line of credit, which was secured by a Deed of Trust executed by Plaintiff and U.S. Bank (the "HELOC Deed").  (*Id.* Ex.)  In his complaint, Plaintiff states, "It is alleged [the Note and HELOC Deed] were sold to a Sponsor or Depositor of a REMIC Trust between 5/17/2006 and 8/17/2006" (*Id.* ¶ 15), but, again, does not provide any facts or explanation to support this allegation.

On June 7, 2011, the day upon which ReconTrust had scheduled the non-judicial foreclosure sale to occur, Plaintiff filed this action in Utah State Court.  (*Id.* at 2.)  Plaintiff's complaint sets forth the following claims related to the refinance of his mortgage and the home equity line of credit, the two loans described above which are secured by the Property: declaratory judgment, unjust enrichment, quiet title, reckless/intentional infliction of emotional distress, fraud, and an accounting.  On June 27, 2011, Defendants removed the case to this Court,

---

[2]Defendants have requested that the Court take judicial notice of the information provided by Utah's Third District Court in *Roberts v. America's Wholesale Lender*.  (Doc. 7, at 4 n.12.)  Under Rule 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Because court orders and docket sheets are exactly the type of documents that are typically judicially noticed, and Defendants have provided the necessary information (*see* Doc. 7-2, at 2-4), this Court takes judicial notice of the state case, as requested by Defendants. Further, the Court notes that taking judicial notice of the state case does not convert Defendants' motion to dismiss into a summary judgment motion.  *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quotations and citation omitted).

and the case was assigned to United States District Judge Dee Benson.  (Docs. 1, 2.)  Judge

Benson then referred the case to United States Magistrate Judge Samuel Alba pursuant to 28

U.S.C. § 636(b)(1)(B).  (Doc. 14.)

On July 18, 2011, Defendants filed the motion to dismiss that is currently before the

Court.  (Doc. 6.)  Plaintiff filed his response to Defendants' motion on September 19, 2011 (Doc.

15), and Defendants filed their reply to Plaintiff's response on October 10, 2011 (Doc. 20).  The

parties presented oral arguments regarding Defendants' motion to dismiss at a December 13,

2011 hearing.[3]  (Doc. 26.)  On December 23, 2011, Defendants filed two notices of supplemental

authority pertaining to their motion to dismiss.  (Docs. 27, 28.)  On February 17, 2012, Plaintiff

filed a pleading entitled "Opposition to Notice of Supplemental Authority in Support of

Defendants' Motion to Dismiss and Supplemental Authority in Support of Plaintiff Motion

Supplemtal Judgment of Quiet Title".  (Docs. 29, 30 (identical document).)

In his February 17, 2012 pleading, Plaintiff states, regarding his argument that

ReconTrust does not have the power of sale in Utah:  "Although this cause of action was stated

in the hearing before Judge Alba, this argument may be moot because the defendant

Recon[T]rust has canceled the foreclosure and filed a new Notice of Default with a member of

---

[3]Several hours after oral arguments had been presented, Magistrate Judge Alba received a
handwritten note from Plaintiff.  The note stated, in part: "I was in your court today and was
prepared to make an argument in my case.  When I began to present my argument, you stopped
me and asked me a question.  My argument was based on the law of mutuality and how that
would effect the court's position based on the fact that AWL was not a legal entity or natural
person."  Plaintiff goes on to request another opportunity to argue his case.

Under the Court's Local Rules of Practice, the Court need not allow parties to orally
argue their motions; instead, the Court has the prerogative to make decisions based on the
pleadings presented.  *See* DUCivR 7-1(f).  Here, the Court opted to allow Plaintiff to argue his
case.  During oral arguments, the Court asked Plaintiff if there was anything else he wanted to
argue, but Plaintiff said there was not.  Plaintiff was given ample opportunity to present his
arguments in pleadings and orally in court.

the bar who does possess the power of sale." (Doc. 29, at 1 ¶ 1.)  On March 12, 2012, the Court

issued an order requiring Defendants to respond to Plaintiff's statement, quoted above.

Defendants responded and verified that ReconTrust is no longer the trustee on Plaintiff's Deed of

Trust.  (Doc. 32, at 2.)  Defendants agreed with Plaintiff's statement and went even further to

argue that Plaintiff was correct in surmising that all of Plaintiff's claims based on ReconTrust's

allegedly unlawful activities are moot.  (*Id.*)  Cognizant of this change of events, the Court now

turns to its analysis of Defendants' motion to dismiss.

<u>**ANALYSIS**</u>

Originally Plaintiff was represented in this action (Doc. 2-1, at 15); however, in his

response to Defendants' motion to dismiss, Plaintiff informed the Court that he had fired his

attorney and would be proceeding pro se (Doc. 15, at 1.)  As a result, the Court construes

Plaintiff's pleadings liberally and holds his pleadings to a less stringent standard than formal

pleadings drafted by lawyers.  *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).  Of

course, a broad reading of Plaintiff's complaint does not relieve him of the burden of alleging

sufficient facts on which a recognized legal claim can be based.  *See id.*  "[C]onclusory

allegations without supporting factual averments are insufficient to state a claim on which relief

can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court notes that it is

not its proper function to assume the role of advocate for Plaintiff or any other pro se litigant.

*See id.*  For example, the Court "will not supply additional factual allegations to round out a

plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*,

113 F.3d 1170, 1173-74 (10th Cir. 1997).

Plaintiff asserts six causes of action in this case.  Plaintiff  (1) requests a declaratory judgment, (2) asserts an unjust enrichment claim, (3) asserts a quiet title claim, (4) asserts a claim for reckless/intentional infliction of emotional distress, (5) asserts a fraud claim, and (6) requests an accounting.  Defendants argue that all six of these claims should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party."  *Maher v. Durango Metals*, 144 F.3d 1302, 1304 (10th Cir. 1998) (citation omitted).  Importantly, the complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); the Court "need not accept conclusory allegations without supporting factual averments." *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

Further, to survive a 12(b)(6) motion to dismiss, Plaintiff must "nudge [][his] claims across the line from conceivable to plausible."  *Id.*  Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the Court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  *See The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## A.  AWL's Corporate Identity

As a preliminary matter, the Court addresses one of Plaintiff's arguments that pervades his entire complaint.  Plaintiff alleges that AWL is a "fictitious name with no legal capacity" that "dose [sic] not exist and has no employees."  (Doc. 2-1 ¶ 61; *see also id.* ¶¶ 3, 4, 10, 12, 17, 18, 38.)  Plaintiff alleges AWL "lacks any legal capacity to do business as a nonentity" (*id.* ¶ 47; *see also id.* ¶¶ 12, 38), "was Fictitious and had no standing" (*id.* ¶ 48; *see also id.* ¶¶ 12, 17, 18), and "was never operated as DBA in any State of the United States of America" (*id.* ¶ 3).  In support of this argument, Plaintiff attaches to his complaint printouts from a publicly available website that purportedly show AWL was not a corporation at the time of the REFI Deed (*id.*, Ex. 5);[4] however, Defendants represent to the Court that the printouts refer to a similarly-named but entirely different and unrelated entity from Defendant AWL.  Defendants represent to the Court that the similarly-named but different entity "has absolutely no connection, affiliation, or relation with any of the Defendants or any of the allegations in Plaintiff's Complaint."  (Doc. 7, at 7.)

Defendants assert that Defendant AWL instead is a trade name, or "doing business as" name, for Countrywide Home Loans, Inc. and is absolutely not the same entity as "America's Wholesale Lender, Inc." (the corporation upon which Plaintiff bases his complaint) that appears on the web printouts.  Defendants assert that AWL was the trade name for Countrywide Home Loans, Inc. during the time period when Plaintiff entered into the REFI Deed with AWL, and that

---

[4]The Court declines to take judicial notice of the computer printouts supplied by Plaintiff. Plaintiff's request that the Court do so is improper because the content in the printouts and assertions Plaintiff seeks to prove through the printouts are directly disputed by Defendants and their notarized document (of which the Court takes judicial notice).  The Court has no way to verify the accuracy of the printouts and their content is not commonly known in the community. The printouts do not contain a fact either  "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *See*  Fed. R. Evid. 201(b).

AWL is the named Lender on the REFI Deed giving AWL the power to assign the security instrument and to appoint successor trustees.  (*Id.* at 7-8.)  In support of this assertion, Defendants direct the Court to an official notarized state document, dated April 3, 1996, from New York State, Department of State, Corporations and State Records Division, that shows America's Wholesale Lender, not America's Wholesale Lender, Inc., was an "assumed name" for Countrywide Home Loans, Inc.  (*Id.* Ex. 3.)

As facts which are a matter of an official public record, the Court chooses to take judicial notice of the New York State document, submitted by Defendants, which shows AWL simply is a trade name for Countrywide Home Loans, Inc.  *See supra* n.2.  This document supports the factual averments presented by Defendants asserting AWL's status, as opposed to Plaintiff's conclusory allegations, which the Court need not accept as true in evaluating a Rule 12(b)(6) motion.  *See Maher*, 144 F.3d at 1304; *Southern Disposal, Inc.*, 161 F.3d at 1262.

As set forth below, many of Plaintiff's claims stem from his argument regarding AWL's corporate identity.  Those claims lack any legal or factual basis; therefore, they should be dismissed.

### B.  Declaratory Judgment

Plaintiff's first claim is for declaratory judgment.  Plaintiff makes five separate requests for declaratory judgment:  (1) to declare that ReconTrust lacks authority to proceed with foreclosure of the REFI Deed and enforcement of the REFI Note ("Request No. 1") (Doc. 2-1, ¶ 31); (2) that ReconTrust is not a qualified trustee under Section 57-1-21(1)(a)(I) or (iv) of the Utah Code, and therefore does not have legal authority as a trustee to sell the Property ("Request No. 2") (*id.* ¶ 32); (3) that Plaintiff should be entitled to damages based on Defendants' alleged

violation of Section 57-1-23.5(2)(a) of the Utah Code, which provides that "[a]n unauthorized person who conducts an unauthorized sale is liable to the trustor for the actual damages suffered by the trustor as a result of the unauthorized sale or $2,000, whichever is greater" ("Request No. 3") (*id.* ¶ 33); (4)  that "Defendants lack any agency from the real parties in interest" ("Request No. 4") (*id.* ¶ 34); and (5) that ReconTrust has no standing to pursue foreclosure because BAC-HLS "lacks standing to assign the Successor Trustee as a Trustee to the Trust Deed" ("Request No. 5") (*id.* ¶ 35).  Defendants assert that this claim must be dismissed for failure to state a claim upon which relief can be granted because Plaintiff's requests for declaratory judgment are based on erroneous conclusions of law.  *See* Fed. R. Civ. P. 12(b)(6).  The Court agrees with Defendants for several reasons and recommends that Plaintiff's requests for declaratory relief be denied.

First, Plaintiff's complaint bases these requests for declaratory judgment on the claim that

> the Defendant, BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP is not a beneficiary of the Trust Deed and is not the holder of the Notes signed by Plaintiff in favor of AWL and that the security follows the notes by operation of law therefor only the true note holders can be the true beneficiaries or possess a security interest in the property.  A trust Deed that has been assigned to the beneficiary that is not in possession of the deed of trust by law is a nullity and must be quieted.

(Doc. 2-1, ¶ 30); however, this Court has repeatedly and consistently rejected claims based on such theories alleging a split of the note and deed of trust.  *See, e.g.*, *Christensen v. D Land Title*, No. 2:11-cv-205-DS, 2011 WL 2312560, at *2 (D. Utah June 8, 2011); *Webb v. Stearns Lending, Inc.*, No. 2:11-cv-159-TS, 2011 WL 2014886, at *1 (D. Utah May 23, 2011); *Witt v. CIT Group/Consumer Fin. Inc.*, No. 2:10-cv-440-TS, 2010 WL 4609368, at *4 (D. Utah Nov. 5,

2010); *Marty v. Mortgage Elec. Registration Sys.*, No. 1:10-cv-33-CW, 2010 WL 4117196, at *6 (D. Utah. Oct. 19, 2010); *King v. Am. Mortgage Network, Inc.*, No. 1:09-cv-162-DAK, 2010 WL 3516475, at *3 (D. Utah Sept. 2, 2010); *Rodeback v. Utah Fin.*, No. 1:09-cv-134-TC, 2010 WL 2757243, at *4 (D. Utah July 13, 2010); *Burnett v. Mortgage Elec. Registration Sys., Inc.*, No. 1:09-cv-69-DAK, 2009 WL 3582294, at *4 (D. Utah Oct. 27, 2009).  The Court finds the reasoning in those cases persuasive in this case and recommends that the Court adopt the reasoning set forth by this Court's long line of precedent on that issue.[5]

Second, the Court should decline all of Plaintiff's requests for declaratory judgment because Utah's four threshold requirements for obtaining a declaratory judgment are not met in this case.  When a case is before a federal court on diversity jurisdiction, as in this case, the court applies the forum state's substantive laws.  *See Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).  Accordingly, the Court applies the substantive law of Utah. Under Utah law, courts have liberal powers to render declaratory relief, so long as four threshold requirements are met: "(1) a justiciable controversy, (2) parties whose interests are adverse, (3) a legally protectable interest residing with the party seeking relief, and (4) issues ripe for determination."  *Utah Safe to Learn-Safe to Worship Coal., Inc. v. Utah*, 94 P.3d 217, 224 (Utah 2004).  Under Utah law, "[a]lthough 'statutes authorizing courts to render declaratory relief should be liberally construed, the courts must, nevertheless, operate within the constitutional and statutory powers and duties imposed upon them.  The courts are not a forum for hearing academic contentions or rendering advisory opinions.'"  *Id.* (quoting *Baird*, 574 P.2d at 715).

---

[5] Moreover, the parties have provided the Court with documents showing that Plaintiff executed loan documents.  (*See, e.g.*, Doc. 2-1, at 17-30; Doc. 15, at 18-28.)  Although Plaintiff may dispute that true value was given, the documents speak for themselves.

"[A]n issue is not ripe for review where there is no 'actual or imminent clash' between the parties." *Id.* (quoting *Boyle v. Nat'l Union Fire Ins. Co.*, 866 P.2d 595, 598 (Utah Ct. App. 1993) (quotation omitted)). "[I]t must appear either that there is actual controversy, or that there is a substantial likelihood that one will develop so that the adjudication will serve a useful purpose in resolving or avoiding controversy or possible litigation." *Salt Lake County v. Salt Lake City*, 570 P.2d 119, 121 (Utah 1977). "[T]he broad 'substantial likelihood' standard 'does not go so far as to require courts to become involved in the adjudication of moot or abstract questions, nor as is sometimes stated, to furnish a fishpond for judicial legal advice.'" *Id.* (quoting *Salt Lake County*, 570 P.2d at 121) (citation omitted).

All of Plaintiff's requests for declaratory relief are predicated entirely on the allegation that ReconTrust is the trustee. As Plaintiff suggested in his most recent filing with the Court (Doc. 29), and as Defendants confirmed in their March 16, 2012 response (Doc. 32), ReconTrust is no longer the trustee on Plaintiff's Deed of Trust. As a result, because all of Plaintiff's declaratory relief requests are predicated upon a situation that no longer exists, the issue is not ripe for adjudication, the fourth threshold requirement for declaratory judgment under Utah law. A substantial likelihood that an actual controversy will develop does not exist; therefore, the Court should deny all of Plaintiff's requests for declaratory judgment.

Third, in addition to lacking an issue ripe for adjudication, Plaintiff's Request No. 3 fails because money damages is not a proper request for declaratory relief, and no foreclosure sale has occurred. Plaintiff's Request No. 3 seeks damages of $52,020 based on alleged violations of Section 57-1-23.5 of the Utah Code (Doc. 2-1, ¶ 33); however, Section 57-1-23.5 penalizes only a person "who conducts an unauthorized sale." As set forth above, there has not yet been a sale

of the Property (Doc. 2, Ex. 1, *Roberts v. America's Wholesale Lender*, No. 110913759 (Utah 3d Dist. Ct., Salt Lake Cnty) ("Plaintiff and Defendants through their counsel, agreed to postpone and cancel the sale as stated on the record.")).

Fourth, in addition to the reasons stated above, Plaintiff's Request No. 4 should be denied because the Deeds of Trust are not null and void. As discussed above, Plaintiff's erroneous argument appears to be based on Plaintiff's misunderstanding regarding AWL's corporate identity, which appears to stem from Plaintiff's reliance on a website that Plaintiff attached to his complaint. The Court has taken judicial notice of the notarized document, provided by Defendants, disproving Plaintiff's argument. Therefore, Plaintiff's argument, which lacks any factual or legal basis, also lacks merit.

### C.  Unjust Enrichment

The Court next turns to Plaintiff's claim for unjust enrichment. Plaintiff's unjust enrichment claim alleges that "none of the Defendants are the holders of the notes secured by the Real Estate, nor do the Defendants have any agency from the real parties in interest, the holders in due course of the notes"; that "AWL . . . is a nonentity and has no legal capacity to do any business"; that Defendants "can not identify and produce the note holders in due course"; and that Defendants are not the proper parties to foreclose and will thus be unjustly enriched through the Property's sale. (Doc. 2-1, ¶¶ 36-42.) Defendants argue that Plaintiff's claim for unjust enrichment fails because (1) the notes are valid and enforceable, and an unjust enrichment claim may lie only in the absence of an enforceable contract; (2) there has been no foreclosure on Plaintiff's property; and (3) foreclosure of a deed of trust when a borrower is in default is not inequitable. Again, the Court agrees with Defendants' arguments.

First, Plaintiff's claim fails because the notes are valid and enforceable contracts exist. As with Plaintiff's Declaratory Judgment claim, Plaintiff's unjust enrichment claim relies on his mistaken assumption, rejected by the Court in its above analysis, that AWL is a nonentity and has no legal capacity to do any business.  Plaintiff's unjust enrichment claim also appears to rely on his erroneous conclusion, based on the split note theory that also has been rejected by the Court in its above analysis, that Defendants are not the proper parties to foreclose and will thus be unjustly enriched by the Property's sale.  Because both of these theories have been rejected by the Court, Plaintiff's unjust enrichment claim lacks any basis or merit.  The notes are valid and enforceable.

In addition, Plaintiff's unjust enrichment claim fails because recovery under an unjust enrichment claim is only available in the absence of an enforceable contract.  *See Davies v. Olson*, 746 P.2d 164, 168 (Utah Ct. App. 1987) ("Recovery under [unjust enrichment] presupposes that no enforceable written or oral contract exists."); *American Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996) ("If a legal remedy is available, such as breach of an express contract, the law will not imply the equitable remedy of unjust enrichment.").  Here, Plaintiff has attached to his complaint two contracts - the REFI Deed (Doc. 2-1, Ex. 2) and the HELOC Deed (*id.*, Ex. 6).  Plaintiff has not argued or shown that these contracts are not enforceable.  Thus, Plaintiff has not established the absence of an enforceable contract.

Second, Plaintiff's claim is not ripe for adjudication because no foreclosure has occurred. To state a valid claim for unjust enrichment, Plaintiff must allege "(1) a benefit conferred on the defendant by the plaintiff; (2) acceptance of the benefit by the defendant; and (3) circumstances

which make it inequitable for the defendant to retain the benefit." *Cargill, Inc. v. Stafford*, 553

F.2d 1222, 1224 (10ᵗʰ Cir. 1977)).  Plaintiff does not allege that any defendants have been

unjustly enriched; instead, Plaintiff only alleges that Defendants will be enriched, at some time in

the future, through the Property's sale.  (Doc. 2-1, ¶¶ 40-42.

Third, foreclosure of a Deed of Trust when a borrower is in default is not inequitable.  *See*

*Associated Indus. Dev. v. Jewkes*, 701 P.2d 486, 488 (Utah 1984) ("[W]e have no basis for

finding that the ordinary operation of a statutory foreclosure proceeding will result in an unjust

enrichment of the mortgagee, . . . ").  Consequently, Plaintiff's unjust enrichment claim fails.

### D.  Quiet Title

Plaintiff's third cause of action is for quiet title.  (*Id.* ¶¶ 43-54.)  Defendants argue that

Plaintiff's quiet title claim fails to state a claim upon which relief can be granted because

Plaintiff does not allege with sufficient legal or factual support that he has a superior claim to the

property over all others.  The Court agrees with Defendants and concludes Plaintiff's quiet title

claim lacks merit for that and other reasons, explained below.

First, Plaintiff's quiet title claim fails to satisfy the requirements of a quiet title action.

"A quiet title claim seeks to extinguish competing interests in the property in favor of the interest

of the plaintiff."  *Wade v. Meridias Capital, Inc.*, No. 2:10-cv-998-DS, 2011 U.S. Dist. LEXIS

28414, at *8 (D. Utah Mar. 17, 2011).  By seeking to extinguish the REFI Deed, Plaintiff is

"required to prove that his interest is superior to the [Deed of Trust]."  *Id.*  To successfully show

that superior interest, Plaintiff must allege title, entitlement to possession, and that the estate or

interest claimed by others is adverse or hostile to the alleged claims of title or interest.  *See*

*Strupat v. Aurora Loan Servs. LLC*,  No. 2:11-cv-279-DS, 2011 U.S. Dist. LEXIS 61721, at *10-

11 (D. Utah June 9, 2011).   Plaintiff must prevail on the strength of his own claim to title and

not on the weakness of Defendants' title or even their total lack of title.  *See id.*  "To prevail,

Plaintif[f] must allege, and ultimately prove, that [his] interest is superior to the Trust Deed."  *Id.*

Plaintiff, however, does not even attempt to demonstrate how he could prevail on the strength of

his own claim, and he does not allege that the strength of his own claim is superior to

Defendants'.  Plaintiff does not allege that he holds clear unencumbered title to the Property, or

even that he is not in default under the loans; instead, Plaintiff admits executing the REFI Deed

and HELOC Deed, and also admits to conveying his interest in the Property for the purpose of

securing the loan.  (Doc. 2-1, at 4.)  Plaintiff attacks Defendants' claims to the Property instead

of alleging the superiority of his own claim.[6]

Second, it appears Plaintiff's claim is based, at least in part, on his split of the note and

deed of trust theory, which the Court rejects.  Therefore, to the extent Plaintiff's quiet title claim

is based upon such a theory, it lacks merit.

Third, this claim appears to be based on another of Plaintiff's arguments which also has

been rejected by the Court - that AWL lacks any legal capacity to do business "as a nonentity."

(Doc. 2-1, ¶ 47.)  For the reasons already set forth above, Plaintiff is mistaken about AWL's

corporate identity, and any claims based upon that mistaken identity fail.

### E.  Reckless/Intentional Infliction of Emotional Distress

The Court next examines Plaintiff's fourth claim for intentional or reckless infliction of

emotional distress.  (*Id.* ¶¶ 55-59.)  The Court concludes this claim also fails to survive

---

[6]The Court notes that "[t]he identity of the beneficiary does not affect the validity of the [Deed of Trust] as . . . encumbrance on Plaintiff's title, nor does the status of the servicer or trustee.  By law, each successor to the Note also receives the benefit of the security."  *Wade*, 2011 U.S. Dist. LEXIS 28414, at *8.

Defendants' Rule 12(b)(6) motion because it is stated in conclusory terms that are factually unsupported and thus fails under the standard set forth in *Twombly*, discussed above.  As the Court has explained, the Court need not accept as true conclusory allegations.  *See Maher*, 144 F.3d at 1304; *Southern Disposal, Inc.*, 161 F.3d at 1262. .  A complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  As such, Plaintiff's claim is inadequately plead and fails as a matter of law.  Further, even had Plaintiff provided adequate factual averments to support his claim, the claim fails to allege the requisite outrageous and intolerable conduct required of a successful intentional infliction of emotional distress claim.  *See Bennett v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 31 (Utah 2003).

### F.  Fraud

Plaintiff's fifth claim is for fraud.  (Doc. 2-1, ¶¶ 60-64.)  It also fails.

Although the language setting forth this cause of action is confusing, it appears that this claim also is based on Plaintiff's erroneous belief concerning AWL's corporate identity.  For example, Plaintiff's claim provides that "[t]he Fraud was that [Angela Nava] had no authority to sign for the America's Wholesale Lender[,] a fictitious name with no legal capacity.  She has never been and [sic] employee of AWL because AWL dose [sic] not exist and has no employees."  (Doc. 2-1, ¶ 61.)  The claim also provides:  "The Fraud was that [Diana Feehan] had no authority to sign for the AWL as Assistant Secretary *By CHL INC as servicer with no AWL has no legal capacity to have anyone sign for it and Diana Feehan has never been and [sic] employee of AWL because AWL dose [sic] not exist and has no employees."  (*Id.* ¶ 62.)  Thus,

because it is based on Plaintiff's mistaken conclusion concerning AWL's corporate identity, Plaintiff's fraud claim lacks any basis or merit.

### G.  Accounting

Plaintiff's sixth and final cause of action is for an accounting.  Defendants argue that this claim fails to state a claim upon which relief can be granted because it fails to allege either that an adequate remedy at law does not exist, or that the facts of this case are so complicated that only a court of equity can satisfactorily unravel them.  Again, the Court agrees and recommends that Plaintiff's request for an accounting be denied and dismissed.

In *Dairy Queen, Inc. v. Wood*, the Supreme Court held that "[t]he necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, . . . the absence of an adequate remedy at law."  369 U.S. 469, 478 (1962).  Thus, "in order to maintain such a suit on a cause of action cognizable at law, . . . the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them."  *Id.* (quoting *Kirby v. Lake Shore & Michigan Southern R. Co.*, 120 U.S. 130, 134 (1887).)  "[M]odern procedural tools - such as the appointment of special masters to assist the jury with difficult matters - make it a 'rare case' when computational complexities will render a legal remedy inadequate."  *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 965 (10th Cir. 2009) (quoting *Dairy Queen*, 369 U.S. at 478).  "[I]t is widely acknowledged that [the *Dairy Queen* Court's] analysis severely limited the circumstances in which [an accounting] would be available."  *Id.*

The purpose of an accounting is to take the damages calculation from a jury so an equitable accounting can be performed by a court of equity, *id.*; however, it appears from

Plaintiff's complaint that Plaintiff misunderstands the purpose of an accounting because he requests that Defendants provide an accounting to him of the "use of all money received by the Defendant banking and financial institutions, including the use of fees to buy derivative or insurance to protect certificate and/or note holders from loss." (Doc. 2-1, ¶ 66.)  Plaintiff does not provide any legal basis for why Defendants would be required to provide him with such information.  Further, Plaintiff fails to allege the absence of an adequate legal remedy, or that the accounts in this case are so complicated that only a court of equity can unravel them.

In any case, because the Court concludes that all of Plaintiff's actual causes of action should be dismissed, no damages for those causes of action exist for which to be accounted.  As a result, Plaintiff's request for an accounting should be denied.

## **RECOMMENDATION**

Based on the foregoing analysis, **IT IS HEREBY RECOMMENDED** that Defendants' motion to dismiss (Doc. 6) be **GRANTED**.[7]

Copies of the foregoing report and recommendation are being mailed to the parties who are hereby notified of their right to object to the same.  The parties are further notified that they must file any objections to the report and recommendation, with the clerk of the district court,

---

[7]The Court notes that Defendants U.S. Bank National Association and Russell S. Walker have not yet entered an appearance in this case.

18

pursuant to 28 U.S.C. § 636(b), within fourteen (14) days after receiving it.  Failure to file objections to both factual and legal findings may constitute a waiver of those objections on subsequent appellate review.

DATED this 22nd day of March, 2012.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge